SHEVIN, Judge.
Barbara Garcia, decedent’s "widow, individually, and as Personal Representative for the Estate of Alfredo Garcia, deceased, and Ana Garcia, decedent’s daughter, [collectively “Garcia”] appeal a final judgment entered in favor of defendant Kendall Healthcare Group, Ltd., d/b/a Kendall Regional Medical Center [“Kendall Regional”] in a medical malpractice action. We reverse.[1]
Although the jury returned a verdict awarding Garcia damages finding that Kendall Regional rendered treatment to Mr. Garcia under emergency circumstances with reckless disregard for the consequences of its actions, the trial court entered judgment notwithstanding the verdict in favor of Kendall Regional in accordance its motion for directed verdict. In its motion, Kendall Regional argued that its actions were neither the cause-in-faet of Mr. Garcia’s death nor reckless under the Good Samaritan Act. § 768.13, Fla. Stat. (1991). Garcia seeks reversal of that judgment.
It is well-settled law that “[a] party moving for directed verdict admits not only the facts stated in the evidence presented but [a party] also admits every conclusion favorable to the adverse party that a jury might freely and reasonably infer from the evidence.” State Farm Mutual Auto. Ins. Co. v. Resnick, 636 So.2d 76, 76 (Fla. 3d DCA 1994)(citing Nelson v. Ziegler, 89 So.2d 780 (Fla.1956)); Boulton Agency, Inc. v. Phoenix Worldwide Indus., Inc., 698 So.2d 1248, 1250 (Fla. 3d DCA 1997). Applying that principle, we hold that the trial court erred in entering a directed verdict in favor of Kendall Regional: the record contains evidence from which the jury could find that Kendall Regional acted with reckless disregard for the consequences of its actions in treating Mr. Garcia as defined in section 768.13(b)(3).[2]
Garcia presented evidence as to events that transpired in the early morning hours of March 19,1993, when seventy-three year old Alfredo Garcia was taken by ambulance to the emergency room of Kendall Regional Medical Center. The evidence showed that Mr. Garcia arrived in the emergency room at 4:17 a.m. At 4:25 a.m., he was examined by the emergency room physician who immediately noted that Mr. Garcia had sustained a severe brain injury and that a CT scan should be performed before further treatment could be rendered. However, the hospital’s scan machine was not working; no efforts were made to remedy the problem at that time.[3] At 4:46 a.m., Kendall Regional began to make arrangements to have Mr. Garcia transferred by ambulance to Mercy Hospital for treatment. However, Kendall Regional told the ambulance company to hold the call because the patient was on a ventilator and Kendall Regional would call back and advise whether it would use its own respiratory therapist. The record establishes that Mr. Garcia was not on a ventilator and there was no other reason for the requested delay. As a result of the delay, the ambulance was not dispatched until 6:52 a.m., and Mr. Garcia did not arrive at Mercy until 8:30 a.m. Mr. Garcia’s condition was no longer salvageable by 7:00 a.m., and he subsequently died at Mercy.
*76 In opining that Kendall Regional s care fell below the accepted standard, Garcia’s expert testified that Mr. Garcia presented to the emergency room with an extreme medical condition that required immediate treatment, that his condition required expeditious transfer to a facility where he could be treated; that he did not leave the facility for several hours and that the delay caused his death. Thus, the jury could have found based on the evidence that Kendall Regional recklessly disregarded the consequences of its actions: it knew or should have known when it rendered emergency services to Mr. Garcia that the delay in transfer would be likely to result in Mr. Garcia’s death taking into account the factors set forth in section 768.13(3).
Accordingly, we reverse the judgment and remand the cause for entry of a judgment in favor of Garcia in accordance with the jury verdict.
Reversed and remanded.

. Garcia also appeals final judgments entered in favor of defendants Randle-Eastern Ambulance Service, Inc., Rafael Fleites, M.D., and Staff Builders Home Health Care, Inc. We find no merit as to the issues raised on appeal as to these judgments and affirm the judgments in favor of these parties.

. As the legislature has defined the term "reckless disregard,” we apply that statutory definition, see Baker v. State, 636 So.2d 1342, 1343 (Fla.1994); Nicholson v. State, 600 So.2d 1101, 1103 (Fla.1992), and reject Kendall Regional’s suggestion that we look to common law definition of recklessness. See State v. Mitro, 700 So.2d 643, 645 (Fla.1997); M.C. v. State, 695 So.2d 477, 483 (Fla. 3d DCA), review denied, 700 So.2d 686 (Fla.1997). In addition, we note that the commentators have rejected the application of the punitive damage standard in defining recklessness in an emergency situation. See Standard Jury Instructions—Civil Cases—Nos. 95-1 and 95-2, 658 So.2d 97, 101 (Fla.1995). See generally Thomas R. Tedcastle & Marvin A. Dewar, Medical Malpractice: A New Treatment for an Old Illness, 16 Fla. St. U.L.Rev. 535, 592-94 (1988).

.The hospital did not call the repair technician until 9:00 a.m., and the technician was able to instruct the hospital by telephone how to operate the equipment suboptimally within 15 minutes of receiving the telephone call. The repair contract provided for services, either by telephone or in person, 24 hours a day, 365 days a year.